IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY HARPER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JOHN THOMAS, et al. | : | NO. 07-0647 |
| | : | |

# REPORT AND RECOMMENDATION

L. Felipe Restrepo                                                                                              August 14, 2007
United States Magistrate Judge

  Henry Harper, a prisoner at the State Correctional Institution at Chester ("SCI-Chester"), Pennsylvania, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  After careful review, I recommend that his petition be denied for the following reasons.

  **1. FACTUAL AND PROCEDURAL HISTORY**[1]

  Petitioner is currently serving a term of five to ten years in prison, after pleading guilty to charges of robbery, retail theft, simple assault, and criminal conspiracy in Court of Common Pleas of Bucks County on August 30, 2000.  Hab. Pet. at 4.  See also Bucks County D.A. Resp. Br. at 2.  The issue of parole was not discussed at sentencing, nor did the plea agreement address

---

 [1] The following facts were compiled from the habeas petition, the responses thereto, and the exhibits submitted by the parties.  Kelly J. Sloane, a Senior Deputy District Attorney with the Bucks County Office of the District Attorney, filed an "Answer to Petition for Writ for Habeas Corpus and Memorandum of Law in Support Thereof" on Apr. 12, 2007 (Doc. No. 5) ("Bucks County D.A. Resp. Br.").  Subsequently, on May 7, 2007, Barry N. Kramer, a Senior Deputy Attorney General with the Pennsylvania Office of the Attorney General, filed a separate "Answer in Opposition to [the] Petition for Habeas Corpus (Doc. No. 9) ("A.G. Resp. Br.").

the issue of parole.  See id.

Petitioner did not file post-sentence motions or a direct appeal.  See id.; Hab. Pet. at 5-7. On June 8, 2001, petitioner filed a petition under Pennsylvania's Post Conviction Relief Act, 42 Ps. C.S. § 9541 ("PCRA"), et seq, which was dismissed on July 26, 2001 after petitioner stated that after consulting counsel he no longer wished to proceed.  See Hab. Pat. at 6; Bucks County D.A. Resp. Br. at 2.

On May 31, 2006, the Pennsylvania Board of Probation and Parole ("Board") granted parole to petitioner subject to special conditions of release including, but not limited to, placement in a Community Corrections Center ("CCC") with a drug/alcohol component and sex-offender treatment.  See A.G. Resp. Br. at 4.  Currently, petitioner remains incarcerated at SCI-Chester awaiting a placement that complies with the special conditions of his parole.[2]  See Hab. Pet. at 9; A.G. Resp. Br. at 6.

Petitioner filed the pending habeas corpus petition on February 15, 2007.  Hab. Pet. at 1. In his petition, Harper claims that he is being held in spite of being granted parole, violating his constitutional rights.  Specifically, he is seeking relief on the following four grounds:

> A.  Petitioner is being unlawfully detained by the Department of Correction since the Pennsylvania Board of Probation and Parole granted parole on May 31, 2006.

---

[2] "Community Corrections Centers are operated by the [Pennsylvania] Department of Corrections and provide a controlled community-based setting outside the prison to continue an inmate's programming while providing a transitional reintegration period.  The Department of Corrections divides the State into three regions: Region I, which includes the greater Philadelphia area and vicinity; Region II which includes areas from Allentown north to the New York Border and west through the Harrisburg area and beyond; and Region III which is the far Western portion of the state including Pittsburgh and Erie.  When an inmate is released to a CCC in the region in which he was convicted."  White v. Grace, 2005 WL 1653436, at *1 n. 1 (M.D. Pa. Jul. 5, 2005).  Because Harper was convicted in Bucks County, his conviction will require him to be released to a CCC in Region I.

> B.  Petitioner is being denied due process because despite favorable recommendations by institutional staff, Petitioner is being denied placement into a community corrections residency without first having an approved home plan.
>
> C.  Petitioner is prejudiced because he is being denied access to the Community Corrections Center and/or released based on circumstances that cannot be changed, despite having been told that if he completed treatment programs he would be released.
>
> D. Petitioner is being detained in breach of contract between Petitioner and Bucks County District Attorney's Office for a plea agreement.  Said agreement was breached by the Department of Corrections.

See  Bucks County Resp. Br. at 3; Hab. Pet. at 9-10.

Respondent argues that petitioner's claims are unexhausted.  See A.G. Resp. Br. at 4-5. Before a state prisoner may seek habeas corpus relief in federal court, all **available** state remedies must be exhausted, and the state must be afforded a meaningful opportunity to consider his claims.  28 U.S.C. § 2254(b); Coady v. Vaughn, 251 F.3d 480, 488 (3d Cir. 2001) (citing Vasquez v. Hillery, 474 U.S. 254, 257 (1986)).  However, in DeFoy v. McCollough, 393 F.3d 439, 445 (3d Cir. 2005), cert. denied, Patrick v. DeFoy, 545 U.S. 1149 (2005) (emphasis added), the Third Circuit found that a state remedy "is **not available** for Pennsylvania state prisoners seeking to challenge the denial of their parole on constitutional grounds other than the *ex post facto* clause."  Therefore, it held that "claims of constitutional violations in the denial of parole [except for Ex Post Facto claims] in Pennsylvania **need not be presented to the state courts** via a writ of mandamus in order to satisfy the requirement of exhaustion."  Benchoff v. Colleran, 404 F.3d 812, 819 n. 5 (3d Cir. 2005) (quoting DeFoy, 393 F.3d at 445) (emphasis added). Accordingly, in the present case, Harper did not need to seek relief from the Pennsylvania state courts before directly going to federal court because he did not raise an *ex post facto* clause claim

in his § 2254 petition. Therefore, exhaustion is not an issue. See Benchoff, 404 F.3d at 819 n. 5 (quoting DeFoy, 393 F.3d at 445); DiSabatino v. Pennsylvania Bd. Of Probat. & Parole, 2006 WL 1308236, at *2 (E.D. Pa. May 10, 2006) (stating claims challenging the denial of parole need not be submitted to the Pennsylvania state courts before being raised in a § 2254 petition); Porter v. Grace, 2006 WL 680820, at *2 (M.D. Pa. Mar. 13, 2006) (same).

Respondent also contends that all of petitioner's claims are untimely. See Bucks County Resp. Br. at 4-7. It appears that all of the claims raised in Harper's habeas petition may be untimely,[3] but, because the Third Circuit has not explicitly stated that claims challenging the

---

[3] Prior to April 24, 1996, § 2255 allowed federal prisoners to file a motion for relief "at any time" with very few restrictions. See United States v. Nadohil, 36 F.3d 323, 328 (3d Cir. 1994); United States v. Perez, 2006 WL 2225950, at *2 (E.D. Pa. Jul. 27, 2006). However, the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), amended 28 U.S.C. § 2244(d) to impose a one-year statute of limitations period to applications for writs of habeas corpus filed under 28 U.S.C. § 2254. As amended, it provides that the one-year statute of limitations begins to run from the latest of the following dates:

> (A) the date on which the state-court judgment pursuant to which he is in custody becomes final;
>
> (B) the date on which an unconstitutional impediment to filing the application is removed;
>
> (C) the date on which the Supreme Court recognizes a new constititutional right in the application (so long as this right is retroactively applicable to cases on collateral review);
>
> (D) 'the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.'

McAleese, 483 F.3d at 212 (citing 28 U.S.C. § 2244(d)(1)(A)-(D)). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period limitation under the subsection." 28 U.S.C. § 2244(d)(2).

Several courts of appeals have held that habeas corpus petitions challenging an

denial of parole do not create a new factual predicate with respect to 28 U.S.C. § 2244(D), we will not dismiss these claims due to untimeliness.  See McAleese v. Brennan, 483 F.3d 206, 213 n. 9 (3d Cir. 2007).

Harper contends that, in spite of being granted parole by the Board on May 31, 2006, he still remains incarcerated in violation of his constitutional rights.  Respondents assert that petitioner's continued incarceration does not amount to a constitutional violation because, although frustrating to Harper, his parole has not been rescinded and he merely awaits release to an appropriate facility that satisfy the conditions of his parole[4].  See also A.G. Resp. Br. at

---

administrative decision regarding parole or imposing discipline are subject to section 2244(d)(1) because the limitations period applies to all habeas corpus petitions filed by persons "in custody pursuant to a judgment of a State court."  28 U.S.C. § 2244(d)(1).  See also Shelbey v. Bartlett, 391 F.3d 1061, 1062 (9th Cir. 2004); Wade v. Robinson, 327 F.3d F.3d 328, 331-32 (4th Cir. 2003); Kimbrell v. Cockrell; 31 F.3d 361, 363 (5th Cir. 2002).

As stated above, it appears that all of petitioner's claims are untimely because he raised the claims in his federal habeas petition more than one year after his judgment became final.  See 28 U.S.C. § 2244(A).  Harper pled guilty and was sentenced on August 30, 2000.  Hab. Pet. at 4.  More than six years later, he filed the pending habeas corpus petition on February 15, 2007.  Hab. Pet. at 1.  Petitioner does not claim he was prevented from filing his § 2254 motion by an impediment resulting from governmental action in violation of the Constitution or the laws of the United States; nor does petitioner contend that such an impediment was removed within the year preceding the date he filed his § 2254 motion.  See 28 U.S.C. § 2244(B).  Moreover, Harper does not allege that new facts came to light supporting a claim presented in the instant motion which could not have been discovered through petitioner's due diligence in the year preceding the date he filed his § 2254 motion.  See 28 U.S.C. § 2244(D).  Likewise, he does not contend that, after his judgment became final, the Supreme Court created a relevant a "new constitutional right," which it made "retroactively applicable on collateral review."  See 28 U.S.C. § 2244(C).  Consequently, it appears that all of the claims contained in Harper's federal habeas petition are untimely.

[4] As respondent observes:

There are certain CCC's that contract with the [Department of Corrections] and/or the Board that can provide the specialized services that petitioner requires to be released on parole.  These contacts give the CCC's discretion to refuse to accept individuals whose behavior are not compatible with the CCC's programs and

9 (citing Declaration of Monique Hendricks, ¶ 2, Exhibit A).  They further note that the conditions of Harper's parole–placement in a Community Corrections Center with a drug/alcohol component and sex-offender treatment–limit the number of facilities that can accept petitioner,[5] see id., and without the specific programs, the Department of Corrections may not release

---

> facilities.  [Declaration of Monique Hendricks, ¶ 3, Exhibit A.]  Because his convictions include certain sex offenses under the Pennsylvania Crimes Code (rape, 18 Pa.C.S. § 3121; and involuntary deviant sexual intercourse, 18 Pa.C.S. § 3121) Harper is required to register under Pennsylvania's Megan's Law.  42 Pa.C.S. § 9791, et seq.  Convicted sex offenders are particularly difficult to place because of the need for community acceptance and because of the community notice requirements.  Many CCC's will not accept Megan's Law registrants, such as Harper, because of these statutory mandates.  Id. ¶ 4.  The DOC has been trying to locate an appropriate CCC that will accept Mr. Harper into its program.  Most recently, on November 7, 2006, two CCC's (Kintock and Lycoming) reviewed but denied Mr. Harper's placement because of his sex crimes and the requirements under Megan's Law.  Id. ¶ 5.
> The DOC's Community Corrections, Region 1 Office maintains a list of sex offenders based on when they were granted parole by the [Board] and referred to the DOC.  The exact composition of the list changes frequently because inmates get placed, are released after serving their maximum sentences, etc.  The DOC attempts to place such persons in a CCC in the order in which they were referred for a placement.  Presently, there are 134 inmates on the list.  Mr. Harper is number 61 on the list.  It is hard to estimate when any inmate, including Mr. Harper, will be placed in a CCC.  Id. ¶ 6.  Harper remains incarcerated at State Correctional Institution at Chester awaiting his actual release on parole to an appropriate facility.  His parole has not been rescinded and the DOC is continuing to make efforts to arrange his release by locating a facility that will accept him.  Id. ¶ 7.  Harper's maximum date of incarceration is March 25, 2010.  Id. ¶ 8.

A.G. Resp. Br. at 9-10.

[5] The Board has the discretion to attach conditions to parole.  61 P.S. § 331.23 provides:

> The [B]oard shall have the power, and it shall be its duty, to make general rules for the conduct and supervision of persons heretofore and hereafter placed upon parole.  In addition to the power to make general rules and regulations hereby granted. The [B]oard may, in particular case, as it deems necessary to effectuate the purposes of parole, prescribe special regulations for particular parolees.

Harper.

To the extent that the present petition may be construed as alleging a violation of the Fourteenth Amendment guarantees of equal protection and due process, these claims do not warrant relief in this case. A litigant seeking to establish a viable equal protection claim must show an intentional or purposeful discrimination. Wilson v. Schillinger, 761 F.3d 921, 929 (3d Cir. 1985), cert. denied, 475 U.S. 1096 (1986). However, the Equal Protection Clause "does not deny to States the power to treat different classes of persons in different ways." Reed v. Reed, 404 U.S. 71, 75 (1971). The Third Circuit has observed that the Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney Gen., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)); see also Kuhar v.Greensburg-Salem Sch. Dist., 616 F.2d 676, 677 n. 1 (3d Cir. 1980) ("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated."); Rivera v. Gillis, 2006 WL 208803, at *4 (M.D. Pa. Jan. 25, 2006) (quoting Kuhar). Harper has not provided facts indicating that he was treated differently than others similarly situated. Moreover, "conclusory habeas allegations unsupported by specifics will not entitle an applicant to relief." See Sproul v. Grace, 2006 WL 910435, at *4 (M.D. Pa. Apr. 7, 2006) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Based on the standards announced in Wilson and Artway, it cannot be concluded that petitioner was subjected to intentional or purposeful discrimination or was treated differently from similarly situated inmates, who had been granted parole by the Board but for whom no appropriate CCC facility placement was available at that time. Therefore his equal protection

claim does not warrant habeas relief. See, e.g., Wilson, 761 F.3d at 929; Artway, 81 F.3d at 1267; Sproul, 2006 WL 910435, at *4; Rivera, 2006 WL 208803, at *4; Porter, 2006 WL 680820, at *2; Perry v. Vaughn, 2005 WL 736633, at *12 (E.D. Pa. Mar. 31, 2005).

With respect to petitioner's due process claim, the Fourteenth Amendment states in pertinent part: "nor shall any state deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. However, "[i]t is well-settled that 'there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.'" Anderson v. Pennsylvania Bd. of Probat. & Parole, 2006 WL 1149233, at *1 (M.D. Pa. Apr. 26, 2006) ((quoting Greenholtz v. Inmates of Neb. Penal & Corrections Complex, 442 U.S. 1, 7 (1979)); see also Rauso v. Vaughn, 79 F. Supp. 2d 550, 551 (E.D. Pa. 2000) (stating the Constitution does not create entitlement to parole). Even further, "when a parole board adopts a specific parole date, the understanding between Board and prisoner does not create a protected liberty interest; until a prisoner has actually been released, parole may still be rescinded without implicating constitutional rights."[6] Bryant v, Thomas, 2007 WL 1650532, at *2 (E.D. Pa. May 8, 2007) (citing DuBrose v. Chesney, 1996 WL 4093, at *2 (E.D. Pa. Jan. 2, 1996)); see also Jago v. Van Curen, 454 U.S. 14 (1981). The United States Constitution "does not give a prisoner a general liberty interest in parole protected by the Fourteenth Amendment." Perry, 2005 WL 736633, at *11 (citing Greenholtz, 442 U.S. at 7).

---

[6] "Similarly, the distinction between parole denial and parole revocation is that the former involves being denied a constitutional liberty that one desires and the latter involves being deprived of a liberty one has." Bryant, 2007 WL 1650532, at *2 (citing Greenholtz, 442 U.S. at 9.) "A constitutionally significant change of status occurs only after the prisoner has experienced rather than merely expected the liberty of parole." Id. (citing DuBrose, 1996 WL 4093, at *2 n. 4).

Furthermore, the Pennsylvania parole statute does not create a liberty interest in the right to be paroled.[7] Anderson, 2006 WL 1149233, at *1 (citing Burkett v. Love, 89 F.3d 135, 139 (3d Cir. 1996)); Logan v. Grace, 2007 WL 1074198, at *4 (M.D. Pa. Apr. 4, 2007); Rodgers v. Parole Agent SCI-Frackville, Wech, 916 F. Supp. 474, 476-77 (E.D. Pa. 1996) ("under Pennsylvania law, the granting of parole is not a constitutionally protected liberty interest"); see also Perry, 2005 WL 736633, at *11.  Therefore, petitioner's claim that he has not yet be paroled to a CCC cannot constitute a procedural due process violation, since he does not have a protected liberty interest in parole.  See Anderson, 2006 WL 1149233, at *2 (citing Greenholtz, 442 U.S. at 7-9).

In addition, to the extent that the petition may be construed as alleging a violation of Harper's substantive due process rights, that claim also does not warrant habeas relief.  The Third Circuit has held: "[E]ven if a state statute does not give rise to a liberty interest in parole release under Greenholtz, once a state institutes a parole system[,] all prisoners have a liberty interest flowing **directly from the due process clause** in not being denied parole for **arbitrary or constitutionally impermissible reasons**."  Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980) (emphasis added); see Anderson, 2006 WL 1149233, at *1 (quoting Block).  In this regard, "[r]elief will only be available if an applicant can show that parole was **arbitrarily** denied based on some impermissible reason such as 'race, religion, or political beliefs,' or that the parole board made its determination based on frivolous criteria with **no rational relationship** to the purpose of parole."  Anderson, 2006 WL 1149233, at *2 (citing Block, 631 F.2d at 236) (emphasis added); see also Hargrove, 1999 WL 817722, at *7 (citing Burkett, 89 F.3d at 140).

---

[7] See also White, 2005 WL 1653436, at *2.

The Board is "the sole determiner as to whether an inmate is rehabilitated and able to serve the remainder of the sentence on parole." Anderson, 2006 WL 1149233, at *2; see Myersd v. Ridge, 712 A.2d 791, 794 (Pa. 1998) ("It is for the Board alone to determine whether or not a prisoner is sufficiently rehabilitated to serve the remainder of his sentence outside the confines of the prison."), allocatur denied, 742 A.2d 173 (Pa. 1999); Carter v. Muller, 45 F.supp.2d 453, 456 (E.D. Pa. 1999) (quoting 61 Pa. C.S.A. § 331.19).  "[F]ederal courts, on habeas review, are not to 'second-guess parole boards,' and the requirements of substantive due process are met if there is some [proper] basis for the challenged decision." Hunterson v. DiSabato, 308 F.3d 236, 246 (3d Cir. 2002) (quoting Coady, 251 F.3d at 487).

In the present case, Harper does not allege that he was denied parole on the basis of his race, religion, or ethnicity; nor can it be concluded that the Board's decision to deny petitioner parole was based upon constitutionally impermissible reasons.  See Anderson, 2006 WL 1149233, at *3.  As noted above, Harper remains incarcerated awaiting a placement that complies with the special conditions of his parole. Furthermore, "[i]t is also noted that a Parole Board's requirement that an inmate complete a sex offender program in order to obtain favorable parole consideration has been found to be constitutionally acceptable." See, e.g., Sproul, 2006 WL 910435, at *4 (citing cases).  "Moreover, even if an inmate successfully completes a treatment program, Pennsylvania's parole scheme does not create a predictable expectation of parole on completion of a rehabilitation program." See Anderson, 2006 WL 1149233, at *2.

Here, petitioner fails to show that the Board "base[d] a parole decision of factors bearing no rational relationship to the interests of the Commonwealth." See Hargrove, 1999 WL 817722, at *7 (citing Block, 631 F.2d at 237).  Since the Board exercised discretion which was neither

arbitrary nor capricious, Harper's substantive due process rights have not been violated, and habeas relief is not warranted. See Anderson, 2006 WL 1149233, at *2 (citing Block, 631 F.2d at 236); Hargrove, 1999 WL 817722, at *7 (citing Burkett, 89 F.3d at 140); Perry, 2005 WL 736633, at *11 n. 13.

With respect to petitioner's claim of breach of contract stating that he entered into a pleas agreement with the Bucks County District Attorney's Office and that the agreement was breached by the Department of Corrections, see Hab. Pet. ¶ 12, petitioner does not explain the terms of the agreement and explain how they were breached.[8] See Bryant, 2007 WL 1650532, at *3.

### IV.   CONCLUSION

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to make a determination as to whether a certificate of appealability ("COA") should issue. "A [COA] should issue 'only if applicant has made a substantial showing if the denial of a constitutional right.'" United States v. Drake, 2002 WL 1020972, at *1 (3d Cir. May 21, 2002) (quoting 28 U.S.C. § 2253(c)(2)); see Miller-EL v. Corckrell, 123 Ct. 1029, 1039 (2003); Slack v. McDonald, 529 U.S. 473, 483 (2000). To establish this, "this petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484; see Miller-EL, 123 S. Ct. At 1040; Drake,

---

[8] Additionally, the Department of Corrections cannot be bound by the plea agreement unless it was a party to the agreement between Harper and the Bucks County District Attorney's Office. The plea agreement, if it exists, has not been produced. See Bryant, 2007 WL 1650532, at *3 n. 4.

11

2002 WL 1020972, at *1.  Here, since Harper has not made the requisite showing of the denial of a constitutional right, a certificate of appealability should not issue.  See Slack, 529 U.S. at 484; Drake, 2002 WL 1020972, at *1.

      My Recommendation follows.

## R E C O M M E N D A T I O N

AND NOW, this 14th day of August, 2007, upon consideration of the Petition for *Writ of Habeas Corpus* under 28 U.S.C. § 2254 and respondent's opposition thereto, for the reasons provided in the accompanying Report, it is RECOMMENDED that the habeas petition should be DENIED and that a certificate of appealability should not issue.

/s/ L. Felipe Restrepo
L. Felipe Restrepo
United States Magistrate Judge